All rise. The judges of the United States Court of Appeals. Hear ye, hear ye. United States Court of Appeals for the Sixth Circuit is now in session. All persons having business before this honorable court, draw near, give attention, and ye shall be heard. God save the United States and this honorable court. Please be seated. Good morning and welcome to the Court of Appeals for the Sixth Circuit. Before we begin, I want to assure you that the panel is prepared for your cases this morning. We have read your briefs. Because we are prepared, we would prefer it if you'd please spend your time arguing the most critical issues in your case. We will assume that for issues that you did not argue today, that you rely upon the arguments contained in your briefs. Finally, if your counsel for the appellant and wish to reserve some time for rebuttal, I know you indicated to the clerk, but also indicate to me. Thank you. Call the first case. Case number 21-647, Maxine Crane Works LP v. OSHA, argument not to exceed 15 minutes of time. Ms. Zillow-Povich, you may proceed for the petition. Good morning. Good morning, Your Honor. Good morning, and may it please the Court. Cynthia Filipovich appearing on behalf of the petitioner, Maxine Crane LP. I would like to reserve three minutes for rebuttal. Very well. Thank you. This case is about worker safety and why the Commission's decision must be reversed in order to guarantee the greatest safety possible when an employee worker is assembling or disassembling a crane, particularly a crane such as the Manitowoc 14,000. Yeah, but can't you just voluntarily go above? If you're really that concerned about safety, can't you just go above and beyond whatever is required by OSHA? If you're that concerned, you could make a two-foot, right? This is just the floor we're talking about, not the ceiling. The general standard, Your Honor, is the four-foot. The specific standard is the 15-foot when fall protection would be needed. You could do two feet. You could do one feet. You could do a foot on your own, right? Maybe I'm wrong about this, but it just seems like we're talking about the minimum you have to do. I don't know. That point didn't resonate. Maybe I'm not understanding it right. That point didn't resonate with me right off the bat, but maybe I'm not understanding it right. I think it becomes... It's funny for the regulated company to argue that they should be more regulated, which is basically what you're arguing, right? Not that we're more regulated. Or the standard should be higher. It's just unusual. It's usually the opposite, which I get. And perhaps, Your Honor, you raise a good point as to what's at issue here, which is  system. So OSHA may come in and say, well, the general standards apply, but when we assemble and disassemble this same crane on the construction site for which it has been rented and maximum employees operate the crane on that... I'm sorry. Maybe I was mistaking my point a little bit, but aren't the construction regulations typically more demanding for construction-related companies? In other words, in this case, it would be less demanding. But generally speaking, wouldn't the construction rules be more demanding in other circumstances? They do provide the greatest safety, so I would tend to agree with you. Yes, they are more demanding. For example, if you're going to apply Section 1926, the specific construction standards, the employer is required to have a competent, certified AD director who is knowledgeable about all the protections of Section 1926 to supervise the assembly and disassembly. So I agree with you, Your Honor, yes, more is required. But in this case, when we were doing more, we were cited for not following the general. So perhaps I'm misunderstanding your question, but do we then follow both? And in this instance, following the general standards would not have prevented the fall, and it presented a tripping hazard because of all of the various requirements, if you will, for the general standards to apply. So if you're saying, why don't you just apply both, I don't think that that's a good... Yeah, my first point is just if your appointments work for safety, there are a lot of things you could do on your own to ensure that. Well, I suppose that's what we were doing. We were providing the most stringent standard, and we were cited for not applying the general standard. Well, the distance at least, the fall distance is greater under the standard you didn't apply. That's correct, Your Honor. It's 15 feet under the specific construction standards, but you can't read that in a vacuum. You have to read it within all of the safety standards within 1926. So to erase that fall protection standard means to erase all of the other safety protection standards that are in Section 1926 that OSHA enacted specific to the safe assembly and disassembly of cranes. Are these policy arguments you're making, or are these arguments you're making connected specifically to the regulations we're looking at and the prior precedent from the Sixth Circuit? I would say they're both, Your Honor. However, this is not a decision that requires any regulatory change. We just need for the regulations to be properly applied. And in this case, we're looking at was the crane, the disassembly of this crane in Maxim's Yard on the day at issue, was that disassembly construction work for purposes of 1910? 1926 is used in construction for purposes of 1926 subpart CC, which says this applies when used in construction. To guide us in deciding whether or not this is in construction, the Secretary and the Commission look  Cardinal, to decide whether the work at issue was in construction, developed a two-pronged test. Notably, Cardinal did not say when off-site work is done, it's not in construction. Cardinal said when off-site work is done, there has to be a nexus to the ultimate construction. How is that nexus met? It also has to be in close proximity to the construction site, does it not? And how is this lot that you're disassembling the crane in close proximity to the construction site? I believe, Judge Griffin, the nexus, too, is different from being on or near the construction site. I'm just reading from the opinion in the Cardinal Industry case. And it applies the standards from the Davis-Bacon Act. And it says that under the Davis-Bacon Act, only if the work is performed on or in close proximity to the construction site is it construction work. And I think that's what the rationale of Cardinal Industry is, that we look to the Davis-Bacon Act, and that's what the Act says, and I don't know how we can not follow Cardinal Industries. Because while Cardinal, and you are compelled to follow Cardinal, but Cardinal didn't stop there. Cardinal didn't say, this is what the Davis-Bacon Act says, on or in close proximity to the ultimate construction site. And if that's not the case, you're not doing work in construction. That's not what Cardinal said. It looked to Davis-Bacon, but it didn't stop there. It went on to say, so in order to be considered work in construction when it's off site, you must have a nexus to the ultimate construction site. Okay, how do you have a nexus to the construction site when the crane has been taken from the construction site, put on your property, which I assume is miles away, and is being disassembled, I guess, for the next job or the next rental? How's there a nexus to the construction site where it formerly was? Well, I think the facts you're on are a little different in terms of the way things happened here. We were cited as this crane was being disassembled for transport to the Durr Mechanical construction site, which is, you're correct, it's in New Jersey, which is not close proximity to. Okay, is that the next construction site or is that the previous one? It's a nexus to, this crane was being disassembled. It's a huge crane. It takes days to- Okay, to be shipped out, rather than having been used. Yes, it was- It was used some other time, I assume, at a different construction site. It was being taken to the construction site. That's correct. It wasn't being taken away from the construction site. That's correct, Judge McKee. It was, Judge McKee, it was being disassembled so that it could be transported. I assume that it had been assembled for a previous construction site, and then it's being disassembled to be moved to another construction site. And I think that's kind of the argument, well, how's there a nexus to a particular construction site when it's basically just a rental crane and it's preparatory for the next job? See, I actually thought it was the end of the first job rather than the beginning of the second job, but I think that even shows that there's two different sites here, and there's not a nexus to really either one. There's definitely a nexus to the DER mechanical site. Absent this crane, that construction couldn't happen. Absent our disassembly- Trucks or any sorts of things that they could rent, probably a construction couldn't do, but the rental company that's going to rent trucks for a construction site, that's not construction work that we're going to be sending vehicles to this construction site in a week or two. That's not construction work, is it? But, Your Honor, we're not renting trucks, we're renting cranes. If you had done this exact same work on the site, it'd be considered construction. Without a doubt. Exact same work. Without a doubt, there is no dispute. So the question is, why isn't it construction? Because it occurs across the street or 10 miles away. That's exactly right, Your Honor. And in this instance, there is not only the nexus to the ultimate construction site. Absent this disassembly, this construction couldn't happen. This is much different than in Cardinal. In Cardinal, they manufactured homes along a 25-different-step assembly line. Once the 25th step was completed, the home was done. And that was the end of the Cardinal employees involved. So this is a crane-by-crane rule? In other words, not every crane at Maxim is going to a construction site, right? Probably 90% of the time. Okay, whatever. Some percentage of the cranes are not going to construction sites. So your rule is a crane-by-crane rule. We pull out crane A, it's going to a construction site, we have certain rules. Crane B is going to a non-construction site, so we have different rules. That's how you think the regulation should work here? No, sir. As opposed to them all being governed by the same rule, no matter where they're going? They do all... I see my time is up. That's okay. You go ahead. If I could just finish the answer to my question. I think we have to look at the term construction as it's defined under the Act. And it's not just to some place where a building is being erected. So Maxim cranes are being used in construction. And their assembly and disassembly is construction. Not every instance. In other words, sometimes Maxim is a construction site and sometimes it's not, just depending on where the crane is going. If the crane is going down the street to be repaired, it's not going to a construction site, so there's different rules that apply. That just doesn't make... Maybe I'm not looking at it the right way, but that just seems odd. Well, but in this case, Your Honor, there is no question it was going to a construction site. I understand, but we're applying a rule for every case. Exactly. We are applying the rule to every case, but on the facts of this case, there is no question that when Maxim... I understand that, but I was just asking about... So, and your rule has no temporal or proximity limit. In other words, if it's 2,000 miles away where the crane is being disassembled, the same rule applies as if it's on the site. Under the two-prong test set forth in Cardinal, there must be a nexus. Or, on the construction site. In this instance, there was a nexus, and it would matter not if the ultimate construction site was California or New Jersey, there was a definite nexus, and we meet actually both prongs of the Cardinal test. Okay, any further questions? Okay, you'll have your three minutes rebuttal. Thank you, Your Honor. We'll hear from the respondent. Good morning. Good morning, Your Honors. May it please the Court. Marissa Schnaith for the Department of Labor. Your Honors, this... The Department of Labor agrees that it doesn't actually have to be on the construction site, correct? There has to be a nexus. There has to be a nexus, but... If it had to be on the construction site, that's what the regulation would say, but that isn't what it says. The regulation... So, the OSHA regulation defining construction work essentially just says, work for construction and look to these other standards, or these other acts in the regulations implementing them to further define them. If it had to be on the site, there wouldn't be a nexus test. It'd just say it has to be on the site, right? So, I think that the nexus test requires a location-based nexus. It doesn't necessarily have to be directly on the site, but there must be some very tangible location. It doesn't have to be directly on the site? No, it does not have to be directly on the site. So, how far away from the site can it be to have a nexus to the construction site? So, it's not necessarily a matter of degree of distance. It is whether there is a logical relationship between wherever this work is happening off-site that would make it reasonable to include it as part of, or in proximity to the construction site. And I think in understanding this... If it's just got to be connected in some way, let's assume this work was being done across the street from the construction site, because that's where there was an empty parking lot where people weren't there on Sundays. So, they decided they're going to do their work on the crane across the street rather than on the construction site. Would that satisfy the nexus test? Hypothetically, it could if that site was not... If it was sort of developed and used specifically for use with this construction site... It's a parking lot. It's a parking lot. Right, but it's... It's a parking lot for a store. It's empty on Sunday. So, instead of trying to do their work on the crane on the site, they do it across the street. Does that satisfy the nexus test? It could. Okay. So, if it could, then why does it matter how far away that parking lot was? It doesn't matter literally the number of miles or degrees how far away. What matters is, is this a place that is sort of used specifically for this construction that it makes sense to include it as part of the construction project and not a place like Maxim's Maintenance Yard that exists. It's a permanent facility. It's regularly used by Maxim for construction and non-construction purposes. Well, it's never used for construction purposes, but it's regularly used to disassemble cranes and use cranes whether they're going to a construction site or not. So, in this case, Maxim's Yard does not have a nexus. It's not reasonable to include it as part of this construction project because it's a wholly separate location. But the parking lot isn't a construction site either. It's simply being used at that time, temporarily, for something related to the construction site, right? Yes. So, why can't that be true with respect to a yard? At least the functions on the yard that are being done in connection with the building some distance away. Well, I think to your honor's point, because the parking lot is temporarily being repurposed for the purpose of construction, it may be that in that case, it makes sense that it could satisfy the nexus requirement because it's used in that moment exclusively for this given construction project. And so, it has that sort of location-based nexus. And that isn't true of a place like Maxim's Yard. And I think it's important to understand the purpose of OSHA's construction regulations and understanding why this makes sense because OSHA's regulations are intended to address the specific hazards that arise at construction sites. Construction sites are very unique physical locations. They involve a number of different kinds of hazards, as well as limitations on the kinds of safety measures that may be feasible to implement there, as opposed to places like Maxim's Yard that are permanent locations with sort of regular firm ground conditions and access. Your friend on the other side says that if we adopt your rule, there are other aspects of it. So, the distance is better for the worker, but there are other parts of it that may be more dangerous for the worker. I didn't quite understand what those were, but can you respond to that point? Yeah. So, I think if I'm understanding Maxim's argument correctly, they believe that the trigger height for fall protection at four feet is less safe than 15 feet, which I think is a bit counterintuitive. Oh, you guys get that part. But they said there are other aspects to it, not just the distance. Right. Yes. And to your honor's point, Maxim is certainly welcome to require those additional... At that point, too. Ms. Wall, I'm just going to... She said specifically there are other parts of the regulation that would make it more safe for workers if they employed the four foot rule. Not having to do with the distance, as I understood it, but other... I'm not a construction expert, but there are other parts of the rule that would put things they could trip on, I think she said, or something. I don't know what she... I'm not sure what she's referring to, but can you answer that question? Yes. Well, I can tell you that in this specific case, the compliance and safety health officer testified that Maxim could have used something called a portable anchorage point, which would have gone, for example, in a truck bed alongside the crane. It would have allowed them to tie off, and it wouldn't be... I think we got all off track in connection with what's more safe or less safe. The argument she was making did not go to the height requirement, because certainly Judge Riedler's correct, you could provide fall protection, more safe fall protection anywhere the crane is. What the point was that they're trying to make here is there are other things in the That doesn't apply unless it's on a construction site. That means you don't have to have somebody trained in assembling and disassembling cranes if you assemble and disassemble them off the site, but you do have to have it on the site. Do you understand what the argument is? Yes. So why does it make sense... We're just focused on height right now, but it does seem to me that if we limit it to this crane regulation only to construction sites, there are things that would make then assembly and disassembly less safe if that doesn't apply to assembly and disassembly someplace else. Judge McKee guessed the question better than I did, so... I'll provide two answers in response that hopefully address this concern. So first, OSHA's policy decision to limit the cranes in assembly in construction standard to construction only, which was an explicit decision. OSHA could have applied it to crane assembly and disassembly in other industries and chose not to. That is a policy decision that OSHA is entitled to make, and the wisdom of that decision is not before this Court. Maxim is welcome to raise that issue with OSHA through application for a variance or through a petition for rulemaking. They could have challenged OSHA's rulemaking when it established this different requirement that doesn't apply to general industry, but that issue is one of OSHA's policy that isn't relevant to the question of, was Maxim engaged in construction work such that the construction industry standards apply? And that's the question before this Court. But I think as a second answer that maybe more... Doesn't that beg the question when we're trying to figure out what nexus means? If you construe it to mean just on the site, that means the more stringent fall protection doesn't apply, but other things do apply. And if you say the standard doesn't apply across the street, then a more safe fall protection, but less safe other protections apply. I'm just trying to figure out why that makes sense to OSHA. Yes. So my second point was going to be that there are other general industry standards that apply to cranes and other kind of fall protection requirements and non-fall protection requirements. So I don't know that everything in the crane assembly and disassembly standard in construction wouldn't also be required by some parallel requirement in the general industry standards. I'm not familiar with the full scope of those standards. So it may be that there are other standards that require similar safety requirements. Well, Maxim spelled out exactly which ones wouldn't apply under OSHA's rules, and they're all crane-specific. Yes, but they did not do an exhaustive review of the general industry standards to see if there isn't a parallel requirement there that would apply and require the same safety measure. I looked at it. I couldn't find any. Can you cite me to one? No, Your Honor. I'm sorry. I don't know the full scope of our general industry standards. They're quite exhaustive. But I could certainly supply that information after argument if you would be interested. But to your point about why is this logical, OSHA's construction standards address the hazards that are specific to construction sites, and they are very different kinds of hazards. And so it does make sense to divide a drawing line about where construction industry standards apply based on the location of the work. As I was explaining, there are different kinds of available equipment, different kinds of safety hazards that exist in general industry locations like Maxim generally that are necessarily different than the physical location of construction sites. So that portable anchorage point I was discussing, that is something that maybe could not be used on a construction site where the ground conditions wouldn't allow for a truck to be pulled up alongside of the crane or there may not be sufficient room for use of equipment like that. So that's a tangible example of where there are actually different sort of safety considerations at the physical location of construction sites versus other areas. And so that's why it does make sense to draw this line based on location. It's not going to be a perfect fit for every factual scenario, but as a general rule, as a general policy for how OSHA regulates, it does make sense. But at the beginning you said you don't draw the line literally at the construction site. The line also can move over to a spot that is dedicated to the construction site, like by parking a lot hypothetical across the street, right? Can I ask maybe a friendly amendment to that question? Sure. The Davis-Bacon regulation refers to sites that are adjacent or virtually adjacent. Are you relying on that language? I didn't hear those words in response to your earlier colloquy with Judge McKee. Well, yes. So that is where this sort of on or in proximity to language comes from. It's from these regulations that the court and cardinal industries review that have considerable precedential value. But in explaining why that makes sense, I'm trying to explain that so the regulations tend to define site of the work as the location where the physical structure will remain once construction is complete. And that does not always encompass sort of the full scope of parts of the construction project that it makes sense to include in the overall construction regulation and sort of understand as being relevant to that project. And so that's why that language, recognized from the regulation and OSHA's enforcement practices, recognize that there may be sites that are sort of adjacent to what would be literally defined as the site of the work that it does make sense to include as part of the construction regulation. You don't look satisfied with that answer. So at first it had to be on the site and then it had to be virtually attached to the site and now you just said it could be near the site. I think you just said that. So I apologize if I have not been clear. It is a location-based nexus requirement. It does not necessarily have to be strictly on the site but there has to be a location basis to connect this, the work being done, to the construction site where it is reasonable to conclude that the location of the work at issue is part of that overall construction project. So oftentimes it is because it is occurring on the actual site of the construction project but it is possible that it could also be adjacent to and close proximity to. That is, the close proximity language appears in the cardinal industry's decision at multiple points from some of these other regulations. So it is possible, as long as there is a reasonable relationship between the work that is happening in proximity to what is the official construction site that that work can be included as well. It has always been a location-based requirement that is not strictly limited to on the site but there has to be a reasonable relationship between the location of the work at issue and the construction project. A nexus. Yes, Your Honor, an on-site nexus. Wait a minute, now you added more words to it. No, Your Honor, cardinal industry's decision itself refers to it as an on-site nexus requirement at various points. I think footnote 10 is a helpful example of that where the court says that requiring an on-site nexus does not, as the commission implies, mean that, et cetera, et cetera. In such cases, the construction site is located within the building and the on-site nexus is satisfied. So I think there are multiple parts of the cardinal industry's decision that make clear that the court understood this to be a location-based nexus requirement even though there are parts where it uses more general language. But I think the regulations, the Davis-Bacon Act regulations that it reviews are a really telling piece of the analysis where it italicizes for emphasis the parts of those regulations that refer to work being done on the site or in close proximity to the site of the construction. And that's on pages primarily 377 to 378 of the opinion. And also cardinal industries identifies the issue on appeal and its ultimate reversal of the commission as being about location which I think is a really important part of that opinion on page I believe it's 375. The court specifically says that the issue on appeal is whether the commission erred in applying the construction standards and focusing on the nature of the work rather than its location. And in reversing the commission on page 379 the court there concluded that the review commission had acted arbitrarily in interpreting construction work under OSHA standards as requiring inquiry into the nature of the work but not its location. So although there's other general language throughout the opinion that Maxim of course identifies in the context of the overall opinion it's clear that what the court understood it was imposing was a location-based nexus requirement which isn't subject to a rigid on-site analysis but is certainly a location-based requirement that Maxim does not meet here given that there is no dispute that its activities happened nowhere near this construction site with no sort of unique specific relationship with this construction site and the Maxim maintenance yard is not itself a construction site or anywhere that construction occurs. I would just note briefly that there's a second step of this two-step test that the commission also found was not satisfied. That would be an independent ground on which this court could affirm the decision that the commission reached the correct conclusion on both. There's no question here that the crane at least ultimately was used in construction, is there? No, there's no question of that fact here. So that's the nature of the work, right? And that's what was rejected in Cardinal that we not only look to the nature of the work this is for construction purposes but we also have to be a nexus to the location and they're disassembling this crane and if something went wrong I assume they would send another crane to the construction site. They rent out a lot of cranes and to say that this crane is tied to this particular construction site it's preparatory work and if for some reason the crane doesn't work out it's not even going to be shipped and they'll ship a different one and that's why the nature of the work is construction and I don't see a nexus to a particular site here. And the exact same thing would happen if you tried to assemble a crane on the site and there was something wrong with the crane and you had to send a new crane in. I'm not sure what Your Honor means by the exact same thing. We may not agree whether it's covered or not covered but it doesn't really matter whether something's wrong with the crane and you discover it off the site or on the site you're going to send a new crane. Yes, that's not necessarily a basis of OSHA's rationale in applying the construction industry standards or not here but the nexus requirement as Judge Griffin has said does not seem to be satisfied here given that there is no location-based tangible relationship between Maxim's Yard and the construction site. I see that my time is up. Any further questions? Thank you counsel for your arguments. Rebuttal, three minutes. I don't want to take all your time I'm sure you'll get a little extra but can you just help me with that adjacent or virtually adjacent language I don't think that came up in your argument either it's in the Davis-Bacon Act the regulation refers to the Davis-Bacon Act our decision refers to the Davis-Bacon Act adjacent or virtually adjacent to me would be a pretty tight limit in terms of scope so am I reading that wrong? Are you just going to say the case says nexus and nexus is broad the most specific thing I can find is the Davis-Bacon adjacent or virtually adjacent I don't know what to do with that language I would suggest that yes Cardinal agreed with the dissenting commissioner and said when the majority of the commission just looked at the nature of the work that was wrong Cardinal said you have to look at the location and in footnote 11 it specifically says and the nature of the work so you look at both location and nature and in deciding this two prong test you need both right correct your honor and to decide the two prong test the court looked to the Davis-Bacon Act the Construction Safety Act the Miller Act and it looked at that language but it did not say as used in construction location based means you must be on or in close proximity to the ultimate construction site instead it said there must be a nexus the most specific thing I can find is that language you're saying nexus is broader where do you take that from the holding of the case yes your honor that is in fact the holding of the case the language of the case itself says there must be a nexus it does use on-site nexus but that just means a nexus to a particular construction project which is the case here the Durham Mechanical Construction Site there is no bright line rule don't we know that the regulation has to be potentially broader than Davis-Bacon because they say look to Davis-Bacon but Davis-Bacon defines site of work so Davis-Bacon is narrower than the OSHA regulation am I right about that you can find some refinements that address the virtual site requirement but the question is does cardinal industry recognize that the OSHA standard is broader than that or doesn't it recognize it seems to me that's what this comes down to otherwise they just define it as they did in Davis-Bacon exactly and in fact cardinal recognizes on page 376 that the OSHA act was enacted to assure so far as possible every man and woman in the nation safe and healthful working conditions Maxim followed that that's a pretty broad statement but the maximum safety in this instance Judge Redler is the specific regulations for cranes and derricks that were enacted in 2010 by OSHA that would have provided the greatest safety to workers in this instance I would just like to draw the courts attention again to the ALJ's decision in Coleman and only for this reason I think there is some discussion this morning about it has to be in close proximity to or on site but Coleman distinguished Cardinal Coleman also pre-manufactured homes but the difference in Coleman is that unlike in Cardinal where the Cardinal employees at the end of the 25th point of the assembly line washed their hands of the project the employees in Coleman had on site activities including constructing the foundation transporting the units to site joining the units together connecting the utilities, black topping and installing curbing in this instance we disassembled this crane pursuant to a contract we couldn't just send any old crane cranes are specific this is a huge crane there was a contract specifically for this crane for this construction site to be operated by a Maxim employee reassembled by a Maxim employee and disassembled again by a Maxim employee just like in Coleman where the steps went further than stopping at the 25th point of the assembly line and the modular units there was more activity by the Coleman employees the same is true in this case with the Maxim employees is there anything particular or specific about this crane that made it unique as opposed to the other cranes that they rent out you say they had a contract for this crane but if it's a 60 foot crane I assume that they could rent another 60 foot crane or something like that is there something unique about this crane for that construction site I think there are things unique about any crane there are many different varieties of cranes I kind of doubt it but this isn't in the record is it I don't think so I think what's in the record is Maxim's website and if you go to Maxim's website we're not going to look at the website for a record any further questions thank you we would ask that you grant the petition in reverse thank you very much for your time